S98A0256. HUGHES v. THE STATE.
(497 SE2d 790)

</div>

HUNSTEIN, Justice.

Jeffrey Scott Hughes was convicted of being an habitual violator, OCGA § 40-5-58, and he appeals contending that statute violates the Georgia and Federal constitutions because it contains no mens rea element. We do not reach this issue, however, because we find Hughes' conviction must be reversed due to the trial court's error in denying his motion to suppress evidence.

1. Marietta Police Officer McCollum testified at the motion to suppress hearing that at the time of the traffic stop in issue, he had been working the morning shift for two years and was assigned at six-week intervals to patrol the area where the stop was made, with the assignments lasting from one to fourteen days. The officer testified that his shift covered the hours of 11:00 p.m. to 7:00 a.m. and that he knew either by sight or by name the residents in the area; he also knew the cars they drove. The officer described the neighborhood as a predominantly African-American, lower income, high-crime area. Officer McCollum estimated he had made more than 50 arrests in the area, 80 percent of them involving illegal drugs, particularly, crack cocaine. The officer testified that the Caucasians he encountered in the area were more often than not looking for drugs or prostitutes. The officer described a common method for purchasing drugs, in which the buyer drives a vehicle into the neighborhood; collects a seller from one of the street corners or yards; the two drive around

---

and sometimes complete the transaction in the vehicle; and then the buyer returns the seller to the pick-up point. The officer estimated that 40 percent of the drug sales occur in this fashion and that he had performed 25 traffic stops based upon observing behavior of this nature.

Officer McCollum testified that he observed appellant, a white male, driving slowly in the neighborhood around 3:00 a.m. The officer did not recognize appellant's car as belonging to any of the residents in the area and testified that he knew appellant was not a resident of the area. The officer saw appellant stop to pick up a black man standing at a corner where the officer knew drug transactions had occurred; the officer followed the two men as they drove circuitously through the neighborhood; and then he activated his blue lights and stopped the car as the men returned to the area where the passenger was picked up. The officer estimated two minutes elapsed between the time the officer first saw appellant's car to the time of the traffic stop. Officer McCollum testified that the basis for the stop was his feeling that a drug transaction was either happening or in the process of happening. The officer stated that the other factors he relied upon in making the stop included: the high-crime nature of the area, the drug transactions he had seen transpire in the area, the route appellant was taking, the time of night, and the fact that he knew the car did not belong to any of the residents in the area. The officer acknowledged that he did not see appellant commit any traffic violations prior to stopping the car and that he did not see any kind of transaction taking place between appellant and his passenger.

The trial court denied the motion to suppress finding that the following factors gave Officer McCollum an articulable suspicion to make the stop: that it was 3:30 a.m.; that appellant had entered a known drug area; and that appellant had driven through, stopped to pick up a person, exited the known drug area, and then returned.

Because the evidence at the suppression hearing was uncontroverted and no question regarding the credibility of witnesses was presented, we conduct a de novo review of the trial court's application of law to the undisputed facts. *Vansant v. State*, 264 Ga. 319 (1) (443 SE2d 474) (1994). The law in this area was plainly set forth in *Vansant*, supra at 320 (2):

> [a]lthough an officer may conduct a brief investigative stop of a vehicle ([cit.]), such a stop must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." [Cits.] The U. S. Supreme Court recognized the difficulty in defining "the elusive concept of what cause is sufficient to authorize police to stop a person," and concluded

that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." [Cit.] "This demand for specificity in the information upon which police action is predicated is the central teaching of [the Supreme Court's] Fourth Amendment jurisprudence." [Cit.]

The facts in this case establish that Officer McCollum did not have " 'a particularized and objective basis for suspecting [appellant] of criminal activity' [cit.]" id. sufficient to justify an investigatory stop. The bases for the officer's traffic stop were that a white man was in a black neighborhood late at night picking up a black man and driving slowly through the area, along with a "pattern" that whites came to that neighborhood looking for drugs or prostitutes and the "pattern" of drug transactions made or arranged in vehicles, with the seller being picked up and then returned to his street-side location. The officer observed no hand-to-hand contact between the men or attempted exchange of items. Compare *Merriweather v. State*, 228 Ga. App. 246 (491 SE2d 467) (1997) and *Lambright v. State*, 226 Ga. App. 424 (1) (487 SE2d 59) (1997). The officer observed no traffic infractions, saw nothing to indicate a local ordinance was being violated, and had no reason to stop the car on any other basis, such as to warn the occupants of some local concern. Compare *Bennett v. State*, 209 Ga. App. 126 (433 SE2d 98) (1993). Nor was this a situation that evolved out of a "first level" police-citizen encounter, thus distinguishing the cases relied on by the State, in which the attention of the officer was attracted by factors similar to the ones in this case and the officer then merely approached to ask questions that did not trigger Fourth Amendment scrutiny, whereupon individuals reacted in such a manner as to provide a particularized and objective basis for suspecting the defendant was involved in criminal activity. See, e.g., *Holmes v. State*, 222 Ga. App. 642 (476 SE2d 37) (1996) (told to leave premises by police, agreed to do so and walked in one direction, but seen minutes later going in opposite direction and attempting to hide when police called to him); *Pace v. State*, 219 Ga. App. 583 (466 SE2d 254) (1995) (nervous behavior, ignoring police and walking away from them after called to, repeated attempts to reach inside pockets); *Jones v. State*, 216 Ga. App. 449 (454 SE2d 631) (1995) (companion who was suspected drug dealer fled when police turned lights on occupants of car in vacant lot). The State cannot even point to any suspicious behavior by appellant in response to Officer McCollum's presence. Compare *Sams v. State*, 265 Ga. 534, 536 (459 SE2d 551) (1995) (Carley and Hunstein, JJ., dissenting).

We conclude that there is no objective manifestation that a person is, or is about to be, engaged in criminal activity merely because the person is a white man in a black neighborhood late at night, who picks up a black man at a location police consider a high-crime area, and who then drives slowly in a circular fashion through the neighborhood. While such behavior might justify an officer in closely observing the individuals engaged in that behavior, it is not alone sufficient to indicate that the individuals are or might be engaged in illegal activity so as to provide a reasonable, articulable suspicion to stop those individuals.

Accordingly, because Officer McCollum lacked a reasonable, articulable suspicion to stop appellant, the evidence uncovered as a result of that traffic stop should have been suppressed.

2. Our holding in Division 1 renders it unnecessary to address appellant's remaining enumerations of error.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

I thoroughly agree with the implicit theme of the majority opinion that courts must be ever vigilant to require that any investigative stop of a vehicle by law enforcement officers comply with the criteria enunciated by the United States Supreme Court for the purpose of assuring that the Fourth Amendment's protection against unlawful intrusion into the private affairs of citizens remains inviolate. However, within those parameters, the judiciary has an equally imperative duty to ensure that law enforcement officers are allowed to do their jobs so as to protect the health and safety of us all. It is my opinion that the majority too narrowly applies the applicable Fourth Amendment precepts to the facts of this case and therefore erroneously reverses the trial court's appropriate denial of the motion to suppress.

The incident that was the focus of appellant's motion to suppress in this case was clearly and unequivocally a *Terry* stop, *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), and as recognized by the majority a valid *Terry* stop requires only a " 'reasonable, articulable suspicion' that criminal activity may be afoot. [Cit.]" *McGaughey v. State*, 222 Ga. App. 477, 478 (474 SE2d 676) (1996). The majority also impliedly concedes that, considering the totality of the circumstances, articulable suspicion is "less than probable cause, but greater than mere caprice," *McGaughey v. State*, supra, 479.

While the majority accurately recounts the circumstances in existence when Officer McCollum made his decision to stop appellant's vehicle, I respectfully submit that the majority fails to properly apply *Terry* jurisprudence to the facts in this case. Police Officer

McCollum was experienced generally and with regard to the particular neighborhood in which he was patrolling. He was very familiar with the neighborhood, knew all of the residents, and could recognize vehicles that belonged. Officer McCollum had made more than 50 arrests in the neighborhood and the great majority of those arrests involved illegal drugs, particularly crack cocaine. The officer described the patrolled vicinity as a high crime area and he carefully articulated what his personal experience and training demonstrated were the methods generally utilized for the sale and purchase of drugs in the area. Not only did Officer McCollum correctly conclude that neither appellant nor his vehicle belonged in the neighborhood in the early morning hours, the officer observed appellant's pick-up of a passenger to take place at a particular corner where the officer knew drug transactions had occurred. The ensuing circuitous travel of appellant's car after the pick-up strengthened the police officer's suspicion that criminal activity was occurring. Notwithstanding the implication of the majority to the contrary, "the decision to stop [appellant] was based on his behavior, not his race." *Holmes v. State*, 222 Ga. App. 642, 644 (476 SE2d 37) (1996). Utilizing the de novo standard of review of the trial court's ruling based upon uncontradicted facts, it is abundantly clear that Officer McCollum acted on the basis of reasonable articulable suspicion and that the trial court correctly denied the motion to suppress. See also *Merriweather v. State*, 228 Ga. App. 246 (491 SE2d 467) (1997).

Because I believe that the trial court did not err in denying the motion to suppress, I dissent to the majority's reversal of the judgment in this case.

DECIDED FEBRUARY 23, 1998—
RECONSIDERATION DENIED APRIL 1, 1998.

*Ruth P. Marks,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Ann B. Harris, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Senior Assistant Attorney General, Carol A. Callaway, Assistant Attorney General,* for appellee.