### A01A1556. HOLMES v. THE STATE.
(556 SE2d 189)

BLACKBURN, Chief Judge.

Following a bench trial, Michael Holmes appeals his conviction for possession of cocaine and possession of drug paraphernalia, contending that the trial court erred by denying his motion to suppress. For the reasons set forth below, we reverse.

On appeal from a denial of a motion to suppress, this Court must construe the evidence most favorably to uphold the ruling of the trial court. *State v. Winnie*.[1] Furthermore, the trial court's application of law to facts which are undisputed is subject to de novo review. Id.

The facts of this case are undisputed. The record shows that, on the evening of September 10, 1999, Detectives Cook and Caswell were patrolling certain shopping center parking lots in order to deter robberies. Although the detectives were in an unmarked car, they were wearing vests which identified them as police officers. On the way to one shopping center, the detectives decided to drive through an area known to them for drug activity. As the detectives drove into this area, they observed Holmes walking from a parked black car over to another red car. The detectives drove to the end of the street, turned around, and noticed the red car drive away.

As the detectives drove down the street, Holmes circled around their car and approached the passenger's side. Holmes walked up to the car window, and Detective Cook asked, "What's up?" Holmes

---

[1] *State v. Winnie*, 242 Ga. App. 228, 229 (529 SE2d 215) (2000).

replied, "Not much," and he started walking away from the detectives. Detective Cook asked Holmes if everything was all right, and Holmes answered affirmatively as he continued to walk away. Holmes started to walk to a nearby apartment complex, changed his mind, and walked back toward the black car that was parked on the street. The detectives did not witness any criminal activity by Holmes during this time span.

At that point, the detectives left the area for a couple of minutes, checked a nearby shopping center, and decided to turn around and go back to where they had observed Holmes. When the detectives returned, Holmes was sitting in the parked black car which was covered in mud and did not look like it had been driven in some time. The detectives pulled up to the parked car and immediately activated their blue lights. The detectives exited their vehicle and asked Holmes to step outside of the parked car. Detective Caswell then performed a pat-down search of Holmes which revealed that Holmes had a glass pipe in his pocket which contained cocaine residue. Detective Cook testified that the detectives did not witness Holmes engage in any criminal activity prior to the pat-down.

On appeal, Holmes asserts that the stop and subsequent pat-down search were constitutionally improper. We agree.

> [United States] Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

(Punctuation omitted.) *McAdoo v. State*.[2]

> In the first [tier], police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particu-

---

[2] *McAdoo v. State*, 164 Ga. App. 23, 26 (1) (295 SE2d 114) (1982).

larized and objective basis for suspecting the persons are involved in criminal activity.

(Punctuation omitted.) *McClain v. State.*[3]

When the detectives in this case first interacted with Holmes, talking to him from their car, the encounter was of the first-tier variety. There was no detention or coercion, and, as such, the protections of the Fourth Amendment were not implicated. When the detectives returned, initiated their flashing blue lights, and required Holmes to step out of the car in which he was sitting, however, the interaction between the detectives and Holmes rose to the level of a second-tier encounter. As such, reasonable, articulable suspicion of criminal activity was required for the efficacy of this stop. Such suspicion, however, was lacking in this case.

When asked to articulate the reasons why Holmes was ultimately stopped, Detective Cook replied: "Well, the mannerism in which he had approached this vehicle to the passenger's side, and then as that — we went down in and that vehicle drove down and we circled back up — he had made a circle around and then approached on the passenger's side of my vehicle." Cook explained that this behavior raised his suspicion because crack runners or dealers often approach cars on the passenger's side in order to be less conspicuous than they would be if they stood in the road and approached the driver's side of the car.

When questioned why Holmes was not stopped until the second encounter, Detective Cook further testified:

> Well, he had been suspicious at that point in time [during the initial contact], but he even made us more suspicious when, you know, he had veered off as he was going to an apartment. And then as we drove off, he did not go to the apartment. He made an immediate beeline back to the car, and that — you know, that showed me that he had no intention — or appeared not to have any intention of going to an apartment in the first place. He was coming to make contact with us.

Detective Cook admitted, however, that Holmes merely walked away after talking to him. Holmes did not run, flee, or try to evade the officers in any way. Moreover, the detectives in this case never witnessed Holmes engaged in any criminal activity.

Based on these facts, there was no objective manifestation that Holmes was, or was about to be, engaged in criminal activity merely

---

[3] *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997).

because he approached the passenger's side of a car in a "high-crime area," walked toward an apartment complex, changed his mind, and walked back toward a car parked on the side of the road. "While such behavior might justify an officer in closely observing [Holmes], it is not alone sufficient to indicate that [Holmes was] or might [have been] engaged in illegal activity so as to provide a reasonable, articulable suspicion to stop [him]." *Hughes v. State*.[4]

Unlike the defendant in *Illinois v. Wardlow*,[5] Holmes did not flee from officers in a suspicious manner. And, although he may have seemed nervous to the detectives, such behavior in the presence of police officers, standing alone, does not provide a basis for the reasonable articulable suspicion required by *Terry*. See *Holt v. State*.[6]

*Judgment reversed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 2, 2001.

*John B. Sumner*, for appellant.
*Garry T. Moss, District Attorney, Charles D. Gafnea, Assistant District Attorney*, for appellee.

[4] *Hughes v. State*, 269 Ga. 258, 261 (1) (497 SE2d 790) (1998).
[5] *Illinois v. Wardlow*, 528 U. S. 119, 122 (120 SC 673, 145 LE2d 570) (2000).
[6] *Holt v. State*, 227 Ga. App. 46, 50 (487 SE2d 629) (1997).