A06A1015. LYTTLE v. THE STATE.
(632 SE2d 394)

ELLINGTON, Judge.
Following a bench trial in the State Court of Cherokee County, the trial court found Rossie Hancock Lyttle guilty of misdemeanor possession of marijuana, OCGA § 16-13-30. On appeal from her judgment of conviction, Lyttle contends that the trial court erred by denying her motion to suppress. For the following reasons, we reverse.

Where, as here, evidence presented at a hearing on a motion to suppress is uncontroverted and there are no questions of credibility, we review the trial court's application of the law to undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). The evidence showed the following undisputed facts. On the evening of May 19, 2005, a deputy sheriff was patrolling Old Shoal Creek Trail in Cherokee County. The road extends, with no outlets, from a subdivision to an old church and cemetery and then dead ends into some woods. The deputy had been ordered to patrol the road because it was the site of frequent criminal activity. The deputy was familiar with two sexual assaults, two stolen vehicles, extensive vandalism to the church, numerous narcotics arrests, and the apprehension of fugitives in that area, but there is no evidence that the deputy had received any reports of suspicious or criminal activity near the road that evening.

At approximately 1:00 a.m., the deputy was driving down Old Shoal Creek Trail away from the church and the cemetery and toward the subdivision when he saw the headlights of a pickup truck in front of him. The deputy could not see the truck's occupants because the oncoming headlights impeded his vision. The deputy immediately activated his lights and stopped the vehicle. Lyttle, who was driving, produced identification upon the deputy's request and later consented to a search of her person and purse. The deputy found marijuana seeds inside a medicine bottle in Lyttle's purse. The deputy arrested Lyttle and, during a search of the truck incident to the arrest, found a hollowed out cigar containing marijuana.

At the hearing on Lyttle's motion to suppress, the undisputed evidence showed that the deputy did not witness any traffic violation or any suspicious conduct before he decided to stop the truck. Instead, immediately on seeing the truck's headlights, the deputy "initiated a stop of that vehicle based on . . . a common occurrence down there of various forms of illegal activity." The deputy "felt it was [his] obligation to determine what [the vehicle's occupants'] purpose [was] for being in that area, as a remote area as it is, at that time of night." The deputy testified, "[i]t's been my finding that there's no reasonable explanation other than for something to be going on that's not supposed to be going on at that time of night when I encounter someone on that road." In the deputy's estimation, Lyttle and her passenger "were in an area that's unlikely to be inhabited by anyone at that time of night unless they are there for illicit purposes." The deputy stated that he would have stopped *anyone* in that area, even the trial judge.

Lyttle contends the trial court erred in finding the deputy had the requisite particularized and objective basis for initiating the traffic stop. We agree.

[A]lthough an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The U. S. Supreme Court recognized the difficulty in defining "the elusive concept of what cause is sufficient to authorize police to stop a person," and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

(Citations and punctuation omitted.) *Hughes v. State*, 269 Ga. 258, 259-260 (1) (497 SE2d 790) (1998).

In *Hughes*, the officer observed "a white man in a black neighborhood late at night, who pick[ed] up a black man at a location police consider[ed] a high-crime area, and who then [drove] slowly in a circular fashion through the neighborhood." Id. at 261 (1). This aroused the officer's suspicion in light of a "pattern" of white drug buyers visiting that neighborhood and of sellers conducting drug transactions by getting into buyers' cars and riding around with them to complete the sale. Id. at 260 (1). The Supreme Court of Georgia concluded that the defendant's behavior consistent with the "pattern" did not constitute an objective manifestation that the defendant was, or was about to be, engaged in criminal activity sufficient to warrant the intrusion of a traffic stop. Id. at 261 (1). The Court held, "[w]hile such behavior might justify an officer in closely observing the individuals engaged in that behavior, it is not alone sufficient to indicate that the individuals are or might be engaged in illegal activity so as to provide a reasonable, articulable suspicion to stop those individuals." Id. In short, the act of driving at night, lawfully, on a public road in a high crime area does not justify an investigative stop in the absence of additional circumstances. Id.[1]

---

[1] See also *Baker v. State*, 256 Ga. App. 75, 77-78 (1) (567 SE2d 738) (2002) (stop was not warranted where suspect turned down a difficult-to-traverse road at night toward a business that had experienced numerous thefts); *Howden v. State*, 240 Ga. App. 139, 140-141 (522 SE2d 279) (1999) (stop was not warranted where suspect was seen driving late at night away from a warehouse in an area known for criminal activity); *Attaway v. State*, 236 Ga. App. 307, 309 (511 SE2d 635) (1999) (stop was not warranted where suspect drove around a subdivision where there had been many incidents of vandalism several times late at night).

In this case, the deputy did not observe Lyttle doing anything other than driving at night, lawfully, on a public road in a high crime area. The deputy stopped Lyttle immediately upon seeing headlights approaching because of his *generalized* suspicion, based on the pattern of activity in the area, that anyone in Lyttle's location at that time of day was "there for illicit purposes," and not because of any *particularized* information suggesting that the occupants of Lyttle's specific vehicle were, or were about to be, engaged in criminal activity. The State's argument that the deputy was justified in stopping Lyttle because she was discovered "in [a] high crime area[ ] under suspicious circumstances, including the time of day,"[2] fails. Accordingly, because the deputy lacked a particularized and objective basis for suspecting Lyttle of criminal activity sufficient to justify an investigatory stop, the trial court should have suppressed the evidence uncovered as a result of that traffic stop. *Hughes v. State*, 269 Ga. at 261 (1); *Baker v. State*, 256 Ga. App. 75, 79 (1) (567 SE2d 738) (2002); *Howden v. State*, 240 Ga. App. 139, 140 (522 SE2d 279) (1999); *Attaway v. State*, 236 Ga. App. 307, 309 (511 SE2d 635) (1999).

*Judgment reversed. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 12, 2006 —
RECONSIDERATION DISMISSED JUNE 8, 2006.

*Anthony J. Morgese*, for appellant.
*David L. Cannon, Jr., Solicitor-General, David M. McElyea, Jeffrey B. Grable, Assistant Solicitors-General*, for appellee.

---

[2] For this argument, the State cites *Popham v. State*, 214 Ga. App. 775 (449 SE2d 150) (1994); *Jones v. State*, 156 Ga. App. 730 (275 SE2d 778) (1980); and *Allen v. State*, 140 Ga. App. 828, 829 (1) (232 SE2d 250) (1976).