### A09A1370. THOMAS v. THE STATE.
(684 SE2d 290)

DOYLE, Judge.

Following a bench trial, Wesley Thomas appeals his conviction for obstruction of an officer,[1] possession of methamphetamine,[2] bringing contraband to a jail,[3] and possession of a firearm during the commission of a crime,[4] contending that the trial court erred by denying his motion to suppress. For the reasons set forth below, we reverse.

On appeal from a denial of a motion to suppress, this court must construe the evidence most favorably to uphold the ruling of the trial court.[5] Furthermore, the trial court's application of law to undisputed facts is subject to de novo review.[6]

The facts of this case, as stipulated by the parties prior to the bench trial, are as follows:

> A car was stolen on February 25, 2008. The suspect, Timmy Morris, abandoned the car on that same date at a residence on Penland Road in Walton County, Georgia. Morris was believed to be hiding in the woods near Penland Road. Captain Mike Pause responded to the location to search for Morris. Pause was in an unmarked police vehicle. While searching for Morris, Pause saw [Thomas] driving his truck slowly on Penland Road looking into the woodlines as if looking for someone. [Thomas] would drive very slowly and almost come to a stop and then proceed further[,] still looking in the woods[,] and pause again. Pause was behind [Thomas] at this time. Pause ran the car tag of [Thomas] and it revealed he lived in the neighborhood near Morris. Pause passed [Thomas] and went around the corner. The deputy immediately turned around and came back towards

---

[1] OCGA § 16-10-24 (a).

[2] OCGA § 16-13-30 (a).

[3] OCGA § 42-4-13 (d) (1) (A).

[4] OCGA § 16-11-106 (b) (4).

[5] See *Holmes v. State*, 252 Ga. App. 286 (556 SE2d 189) (2001).

[6] See *Hughes v. State*, 269 Ga. 258, 259 (1) (497 SE2d 790) (1998); *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994); *Holmes*, 252 Ga. App. at 286.

[Thomas]. [Thomas] was stopped in the road when Pause rounded the corner and approached him. Pause got out of his car and walked to [Thomas's] truck. . . . [Thomas] had his cell phone in his hand as if he were about to use it. Pause ordered [Thomas] to give him his cell phone[,] and when [Thomas] did not do so, Pause took the phone from him. Pause examined the phone and scrolled through the phone numbers and saw Timothy Morris'[s] phone number in the cell list of phone numbers. Pause asked [Thomas] what he was looking for and [Thomas] told him pulp wooders. Pause had not seen any pulp wooders in the area that date and was not familiar with that being an area for such activity.[7] Pause asked [Thomas] if he was there for Timmy Morris and [Thomas] denied that. Pause told [Thomas] not to leave and went to get his camera to take photos of the truck and [Thomas] for future reference. Pause asked [Thomas] to get out of the truck so he could take the picture. This all happened in a few minutes. [Thomas] refused to do so. Pause placed [Thomas] under arrest for obstruction of an officer.

When arresting [Thomas] and removing him from his truck, Pause and an assisting deputy observed a handgun sitting in the center console area. They seized the gun during [Thomas's] arrest. [Thomas] was transported to the jail. Inside the jail, deputies found clear plastic material containing an off-white powdery substance in [Thomas's] pocket. This substance was sent to the Division of Forensic Sciences at the Georgia Bureau of Investigation and was analyzed. The substance did test positive for methamphetamine and the net weight of the sample tested was less than one gram. [Thomas] had not informed any law enforcement officer of the presence of the drug prior to crossing the guard lines established at the Walton County jail.

The trial court denied Thomas's motion to suppress and convicted him on all four counts after a bench trial. On appeal, Thomas asserts that he was unlawfully detained and that the trial court thus erred in denying his motion to suppress the illegally seized evidence. We agree.

---

[7] At the suppression hearing, Pause testified that he could not speak to whether or not pulp wooders had been working in the area anytime prior to February 25, 2008, that the area was one with a lot of acreage and a lot of woods, and that there was no reason to believe that Thomas was not there looking for pulp wooders.

122

The United States Supreme Court has identified three tiers of police-citizen encounters.[8] The first tier consists of "communication between police and citizens involving no coercion or detention" and therefore does not implicate the citizen's Fourth Amendment rights.[9] "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification."[10] The second tier involves "brief seizures that must be supported by reasonable suspicion,"[11] and the third tier encompasses "full-scale arrests that must be supported by probable cause."[12]

Here, the parties both agree that Pause's taking of Thomas's cell phone and instructing him not to leave so that he could take his photograph constitute a second tier encounter allowing Pause to detain Thomas briefly only if Pause had a particularized and objective basis for suspecting Thomas was involved in criminal activity.[13] Pause admitted that without the information he gained from his review of Thomas's cell phone log, he would have let Thomas go had he agreed to let Pause take his picture; but when Thomas refused to allow his picture to be taken, Pause arrested him for being uncooperative. Because Pause lacked reasonable suspicion to initially detain Thomas, the evidence was illegally seized and should have been suppressed.

The State does not dispute that Pause had no legal basis for taking Thomas's cell phone from him or viewing the call log without Thomas's consent. However, the State argues that even excluding the knowledge Pause gained from reviewing the call log, Pause still had a reasonable suspicion that Thomas was involved in criminal activity. Thomas's mere presence at the scene of the abandoned vehicle alleged to have been stolen by Morris, however, was insuffi-

---

[8] See *Holmes*, 252 Ga. App. at 287.

[9] Id.

[10] (Punctuation omitted.) *State v. Bryant*, 203 Ga. App. 69, 71 (416 SE2d 368) (1992).

[11] *Holmes*, 252 Ga. App. at 287. To establish the necessary reasonable suspicion, the totality of the circumstances must show that the officer had specific and articulable facts which, taken together with rational inferences from those facts, provided a particularized and objective basis for suspecting the particular person detained of criminal activity. See *Esposito v. State*, 293 Ga. App. 573, 576 (667 SE2d 425) (2008).

A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. The "totality of the circumstances" test allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might elude an untrained person.

(Punctuation and footnote omitted.) Id.

[12] *Holmes*, 252 Ga. App. at 287.

[13] See id.

cient to establish a reasonable articulable suspicion to detain Thomas.[14] While Thomas's slow driving and intermittent stops may have caused Pause to closely observe him,[15] it was not sufficient to indicate that Thomas was or might have been "engaged in illegal activity so as to provide a reasonable articulable suspicion" to detain him.[16]

In an effort to bolster his basis for detaining Thomas, Pause testified that prior to approaching him, he ran Thomas's license, which revealed that Thomas lived at a Hightower Trail address, an area where he recalled Morris had lived at one time. Pause also testified that Thomas did not take his car out of drive and acted like he was in a hurry to get away from Pause.[17] But Pause admitted that numerous people live in the same area of Walton County, that he had not observed Thomas violate any traffic laws, and that Thomas gave him a valid driver's license. And when asked when the encounter escalated to a second tier stop and why he ordered Thomas from the truck, Pause responded: "I wanted to take a picture of him and his truck. I don't have a video camera in my car, so I was going to take pictures of him and his truck."

At the time that Pause detained Thomas to take his picture, Pause did not have a reasonable articulable suspicion for detaining Thomas, who had done nothing more than drive slowly through a neighborhood, intermittently stopping to look into the woods, and who happened to live in an area that Pause recalled Morris had lived at one time. Thomas had committed no traffic violations, and when approached by Pause, he provided a valid license and informed the officer that he was there looking for pulp wooders, a statement that Pause did not discredit.[18] Thus, we conclude that because there was no objective manifestation that Thomas was or was about to be engaged in criminal activity, his subsequent arrest for refusing to

---

[14] See *Hughes*, 269 Ga. at 261 (1) ("[t]here is no objective manifestation that a person is, or is about to be, engaged in criminal activity merely because the person is a white man in a black neighborhood late at night, who picks up a black man at a location police consider a high-crime area, and who then drives slowly in a circular fashion through the neighborhood"); *Holmes*, 252 Ga. App. at 288 (approaching the passenger's side of a car in a "high-crime area," walking back toward an apartment complex, changing his mind, and walking back toward a car parked on the side of the road is insufficient to indicate defendant had or was about to engage in criminal activity).

[15] Pause testified that this type of driving is frequently observed with persons "who are looking to see what is outside a house that they could steal."

[16] (Punctuation omitted.) *Holmes*, 252 Ga. App. at 289.

[17] Nervous behavior in the presence of police officers does not in and of itself provide a basis for the required reasonable suspicion. See id.

[18] See *Ward v. State*, 277 Ga. App. 790, 793 (627 SE2d 862) (2006) (meaningless inconsistencies in answers to police questions do not give rise to articulable suspicion). But see *Akins v. State*, 266 Ga. App. 214, 217 (2) (596 SE2d 719) (2004) (reasonable articulable suspicion of criminal activity supported officer's request to exit vehicle when the occupants of the car acted very nervous and gave conflicting accounts about their travel itinerary).

allow his picture to be taken was illegal, and the evidence seized incident to that arrest should have been suppressed.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 17, 2009.

*J. Tom Morgan III*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Candace K. Slezak, Assistant District Attorney*, for appellee.