**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

October 26, 2021

# In the Court of Appeals of Georgia

A21A1014. BIEN-AIME v. THE STATE.

BARNES, Presiding Judge.

After a jury trial, Maxime Patrick Bien-Aime was convicted of multiple offenses as a result of the contraband found in his possession during a traffic stop of the vehicle he was driving. In this appeal, Bien-Aime maintains that the stop violated his Fourth Amendment rights, and that the trial court thus erred by denying his motion to suppress the evidence discovered thereby. Because Bien-Aime has shown merit in that argument, we reverse the judgment of conviction. We thus do not reach the remainder of his enumerated claims of error.

*Trial Evidence*

Construing the evidence in the light most favorable to uphold the trial court's findings and judgment,[1] the record shows that around 8:00 p.m. on May 15, 2014, Bien-Aime drove a Chrysler automobile into a parking lot shared by two restaurants; after making a loop, Bien-Aime made a right turn out of the parking lot, then continued driving along the roadway. A uniformed police officer, who was sitting in his marked patrol vehicle stationed in the parking lot, began following the Chrysler. Due to parking lot traffic, however, by the time the officer was able to make a right turn out of the parking lot, the Chrysler had rounded a bend along the roadway, and the officer had lost sight of the vehicle. The officer thus accelerated beyond the 45-mile-per-hour speed limit and caught up with the Chrysler; the officer observed that the Chrysler's turn signal began blinking, and the car next began turning into a bank parking lot.[2] The officer then activated the patrol vehicle's emergency equipment (blue-lights and a siren ) and initiated the stop in question. Concomitantly, the officer informed dispatch that he was "conducting a traffic stop on a suspicious vehicle,"

---

[1] See, e. g., *Lewis v. State*, 323 Ga. App. 709, 709, n. 1 (747 SE2d 867) (2013), and text accompanied.

[2] The officer testified that the bank was closed at the time; and that when he walked to Bien-Aime and advised him of the reason for the stop, Bien-Aime told him that he had driven to the bank to use its ATM machine (which was located outside the bank).

which automatically summoned a backup police unit to the scene. During the stop, police retrieved marijuana, cocaine, and a firearm either from Bien-Aime's person or from the inside of the Chrysler. The officer arrested Bien-Aime on multiple charges.

Aspects of the foregoing events were captured by the arresting officer's police equipment, and portions of the recording were presented to the jury.

*Challenges to the admissibility of the drug and firearms evidence*

Indicted on charges related to the drugs and the firearm, Bien-Aime moved to suppress evidence of the collected contraband on Fourth Amendment grounds. See generally *Bodiford v. State*, 328 Ga. App. 258, 261 (1) (761 SE2d 818) (2014) ("On a motion to suppress contraband discovered during a traffic stop, the State bears the burden of proving that the [stop] of the car was lawful.") (citation and punctuation omitted).

At the hearing on Bien-Aime's motion to suppress, the State relied upon the officer's testimony that when the Chrysler's driver saw him stationed in the parking lot, the driver appeared to get "a panic looking expression on his face"; that the driver made a loop, then exited the parking lot; that the restaurants' parking lot had been experiencing a large number of automobile break-ins; that perpetrators of those crimes often used rental vehicles; and that he (the officer) had ascertained before

3

stopping the Chrysler that it was a rented vehicle. Toward the end of direct examination, the prosecutor directly asked the officer for his bases for stopping the Chrysler:

> Q: Officer, can you tell this Court all the reasons or all the things you considered prior to making that traffic stop?
> A: Well, like I initially said, I was patrolling [one of the restaurants sharing the parking lot] due to the large number of entering autos. We had had approximately ninety-four in that parking lot since 2011, so in about a two and a half, three year time span. Most of the time, those vehicles were rental vehicles. He had observed my presence in the parking lot, appeared to get nervous, began to leave the parking lot. I attempted to follow him, and he rapidly accelerated, resulting in me having to exceed sixty mile per hour to catch back up to his vehicle. Then he quickly – as soon as I got directly behind him, he made that right turn. I felt he was trying to either avoid contact with me, or hope I'd go away. At that point, I went ahead and made contact with him based on reasonable suspicion that a crime was occurring.
> Q: Yes, sir. And as far as the rapid acceleration, you didn't write him a ticket for speeding at that time, did you?
> A: No, ma'am. Because I could not see his exact acceleration on the roadway. I only knew what it took my patrol car to catch back up to him.

On cross-examination, defense counsel followed-up with:

4

Q: My question was you stopped him based on what. You said the reasonable suspicion that a crime was occurring. My follow-up question was the crime which was occurring occurred where?

A: It would have been the crime of entering auto, which most – most commonly when those are conducted, they will hit one location, move from that location to another location, hit that location, move from there to another location. So I felt that maybe he had been coming into the parking lot to commit entering autos, observed my presence and immediately left.

Q: And had you received any prior information to look out for [Bien-Aime's] vehicle?

A: No, sir.

The trial court denied the suppression motion. Thereafter convicted, Bien-Aime argued on motion for new trial that the evidence collected during the stop was inadmissible. The trial court denied that motion.[3]

*Claims enumerated on appeal*

---

[3] This is the second appearance of this case before this Court. In the first appearance, as is relevant at this juncture, this Court vacated the order denying a new trial, and remanded the case for the trial court to enter detailed findings of fact as to aspects of its denial of Bien-Aime's motion to suppress. *Bien-Aime v. The State*, 355 Ga. App. XXIV (Case No. A20A0082) (June 23, 2020) (unpublished) (hereinafter, *Bien-Aime I*). On remand, the trial court entered an "amended order." And in this appeal, Bien-Aime continues to contest the denial.

1. Bien-Aime maintains on appeal that the stop was in violation of the Fourth Amendment, and that the trial court thus erred by denying his motion to suppress the evidence obtained thereby.

In reviewing a trial court's ruling upon a motion to suppress evidence on Fourth Amendment grounds, we apply three fundamental principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. . . . (Citation and punctuation omitted.) *Miller v. State*, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010). In *Miller*, [the Supreme Court of Georgia] further noted that this standard of review requires us to focus on the findings of fact made by the trial court *in its order* and the evidence supporting those findings, rather than other evidence gleaned from the record, construing it in favor of upholding the trial court's order.

(Emphasis supplied.) *State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019); see also *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015)

6

(reciting that an appellate court "generally must limit its consideration of the disputed facts to those expressly found by the trial court."). And as was expounded in *Caffee v. State*, 303 Ga. 557 (814 SE2d 386) (2018):

> We have repeatedly said that on an appeal from the grant or denial of a motion to suppress, appellate courts must focus on the facts found by the trial court in its order, as the trial court sits as the trier of fact. An appellate court may, however, consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape.

Id. at 559 (1). "These principles apply equally whether the trial court ruled in favor of the State or the defendant." (Citation and punctuation omitted.) *State v. Hinton*, 309 Ga. 457, 457-458 (847 SE2d 188) (2020).

Challenging all convictions, Bien-Aime maintains in this appeal that the stop violated his Fourth Amendment rights, because the officer did not have any reasonable, articulable suspicion to justify the stop. See *Lumpkin v. State*, 310 Ga. 139, 151-152 (3) (849 SE2d 175) (2020) ("Where an officer lacks reasonable suspicion to stop a vehicle, the traffic stop violates the Fourth Amendment, and evidence obtained as a result of the stop must be suppressed.").

[A] brief investigative stop of a vehicle is justified when an officer has a reasonable and articulable suspicion that the driver or vehicle is subject to seizure for violation of the law. In this regard, we have held that reasonable and articulable suspicion must be an *objective* manifestation that the person stopped is, or is about to be, engaged in criminal activity, and that this determination can only be made after considering the totality of the circumstances. In viewing the totality of the circumstances, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting the particular person stopped of criminal activity.

(Emphasis in original; citations and punctuation omitted.) *Lewis v. State*, 323 Ga. App. 709, 711 (747 SE2d 867) (2013). See *Adkinson v. State*, 322 Ga. App. 1, 2 (743 SE2d 563) (2013) ("Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.") (citation and punctuation omitted).

In its order denying Bien-Aime's motion to suppress[4] (and again in its amended order denying Bien-Aime's motion for new trial), the trial court set out these findings of fact:

[T]he Defendant drove into a restaurant parking lot that had recently been the site of a high number of crimes involving unlawfully entering automobiles. Many of these crimes were perpetrated by an individual or individuals driving rental cars. Defendant was driving a rental car. Upon entering the parking [lot], the Defendant saw [the police officer] sitting in his marked patrol vehicle. The Defendant had a panicked look on his face and promptly exited the parking lot. The Defendant then rapidly accelerated upon exiting the parking lot, so much so that [the police officer] had to speed to catch up to the Defendant. Once [the police officer's] marked patrol vehicle caught up to the Defendant's rental car, the Defendant quickly changed lanes into the turn lane to enter the parking lot of a closed business. Only after that time did [the police officer] activate the blue lights on his patrol vehicle and initiate the stop of the Defendant. Taking all of these facts into consideration, as well as the inferences and deductions of a trained law enforcement officer, the

---

[4] See generally *Vaughn v. Fairley*, 75 Ga. App. 768, 769 (44 SE2d 461) (1947) (ascertaining that the trial judge, by overruling the defendant's motion for new trial, approved his previous findings of fact).

[c]ourt finds that [the police officer] had reasonable articulable suspicion to conduct the stop of the Defendant.[5]

The State asserts that the foregoing "findings reflect a proper and reasonable assessment of whether [the officer's] testimony – and the accompanying video – supported the existence of reasonable, articulable suspicion." But having considered the record pursuant to the applicable standard of review,[6]

---

[5] In the amended order denying Bien-Aime's motion for new trial, entered upon remand from *Bien-Aime I*, the trial court focused heavily on Bien-Aime's argument that the officer's claim – that the restaurants' parking lot had been an area of numerous automobile break-ins – was *not* credible. In support of his argument, Bien-Aime cited the trial court to approximately 170 police reports, which he claimed covered the relevant time and area, yet made no reference that any reported crime had been perpetrated by an individual using a rental car.

The trial court expressly rejected Bien-Aime's argument in its amended order. And on appeal, Bien-Aime posits that the trial court's credibility determination is clearly erroneous, asserting that it is directly contrary with what he claims amounted to "documentary evidence" or "objective evidence" (the police reports). We need not reach that argument. Even accepting for purposes here that the trial court's credibility determination in that regard was authorized, we conclude that the stop of the Chrysler was nevertheless unconstitutional. See infra.

[6] The trial court made no finding that Bien-Aime was stopped based on probable cause of a traffic code violation. Indeed, the State acknowledges *Durrence v. State*, 319 Ga. App. 866, 867 (1) (738 SE2d 692) (2013), for the proposition that a reviewing court may consider all relevant evidence of record, including evidence presented at a pretrial hearing, at trial, or an appropriate post-trial hearing. See generally *Sanders v. State*, 235 Ga. 425, 432 (II) (219 SE2d 768) (1975) (per curiam) (noting that "testimony adduced at a post-conviction hearing can be utilized to show whether or not there was probable cause for arrest"), superseded in part by statute on

10

other grounds as noted in *State v. Dempsey*, 290 Ga. 763, 765 (1) (727 SE2d 670) (2012). The State further acknowledges the police officer's testimony at the new trial hearing that he had not observed Bien-Aime committing any driving violation:

> Q: Allright. When you observed [Bien-Aime's] vehicle enter the parking lot, did you observe any criminal activity?
> A: No, sir.
> Q: Did you observe [Bien-Aime] commit any traffic violation?
> A: No, sir.
> Q: Did you have any specific reason to be on the lookout for [Bien-Aime]?
> A: For [Bien-Aime] specifically? No, sir.
> . . .
> Q: There was nothing illegal about the way he was driving the car?
> A: That's correct.
> Q: He had a legal right to drive in that parking lot at the time?
> A: Yes, sir.

And because the trial court did not make any finding that Bien-Aime was stopped pursuant to probable cause of a traffic code violation, and thus did not base its analysis upon any such violation, this Court likewise does neither. (The State has pointed to nothing specific in the recording – and we find nothing therein – that was indisputably discernible in that regard.) See *Caffee*, 303 Ga. at 559 (1) (explaining that the Court of Appeal erred when it "supplemented the trial court's findings with additional findings of its own that relied on testimony that inherently presented questions of credibility and were not 'indisputably discernible' from the video of the stop"); *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony."); see further *Mathenia v. Brumbelow*, 308 Ga. 714, 715-716 (1) (843 SE2d 582) (2020) (citing *Hughes*, 296 Ga. at 747 (1), for the proposition that, with respect to evidence of record not referenced in a trial court's findings of fact, appellate courts "do not know . . . exactly why the trial court said nothing about [certain] things. But we do know that the trial court could have assigned no weight at all" to certain evidence or testimony, finding it not credible) (citation, punctuation,

we agree with Bien-Aime that the trial court erred in concluding that the underlying stop was supported by reasonable, articulable suspicion.

As we have recently observed, "our Supreme Court and this Court have held that a police officer witnessing a suspect fitting a *pattern* of criminal behavior in a high-crime area is not sufficient to provide a reasonable, articulable suspicion to detain the suspect." (Emphasis supplied.) *Runnells v. State*, 357 Ga. App. 572, 576 (1) (851 SE2d 196) (2020). Indeed, "Georgia case law is clear that, absent some particularized suspicion of wrongdoing, merely acting in a way that fits a known 'pattern' of criminal activity does not justify an investigatory stop." (Citations, punctuation and emphasis omitted.) *Williams v. State*, 327 Ga. App. 239, 244 (758 SE2d 141) (2014). "A person's mere presence in a high crime area does not give rise to reasonable suspicion of criminal activity, *even if police observe conduct which they believe is consistent with a general pattern of such activity*." (Emphasis in original; punctuation and footnote omitted.) *Valles v. State*, 357 Ga. App. 167, 169 (850 SE2d 212) (2020). See, e. g., *Hughes v. State*, 269 Ga. 258, 260-261 (1) (497 SE2d 790) (1998) (finding no reasonable, articulable suspicion for conducting traffic stop, where defendant drove to a high-crime area, picked up a man and drove them in a circuitous

and emphasis omitted).

fashion back to the area where the passenger was picked up); *Valles*, 357 Ga. App. at 169-170 (concluding that driving multiple different routes through a Walmart parking lot in an area where vehicles had recently been entered into illegally did not give rise to reasonable, articulable suscpicion to justify a stop of the vehicle); *Lewis*, 323 Ga. App. at 712 (explaining that the traffic stop was not justified by the officer's observation of the defendant's "vehicle driving very slowly late at night in an area known for recent metal theft because even when viewed in the totality of the surrounding circumstances, such conduct does not, in and of itself, constitute reasonable and articulable suspicion of criminal activity"; and further re-emphasizing that "an officer's feeling that a person is acting in a suspicious way does not amount to a particularized and objective basis for suspecting him of criminal activity") (punctuation and footnote omitted); *Holmes v. State*, 252 Ga. App. 286, 286-289 (556 SE2d 189) (2001) (finding no reasonable, articulable suspicion of criminal activity, where the defendant walked through a parking lot known for drug activity, stopped briefly at parked cars, changed his walking direction after noticing the police, and appeared nervous when approached by the police); *In the Interest of T. J. B.*, 237 Ga. App. 824, 825-826 (517 SE2d 77) (1999) (explaining that the circumstances did not supply officers with a particularized and objective basis for conducting the

investigatory stop of the juvenile, where the evidence showed only that the juvenile was deliberately avoiding contact with law enforcement in an area known for drug transactions); *Attaway v. State*, 236 Ga. App. 307, 309 (511 SE2d 635) (1999) (concluding that the police officer did not have a "particularized and objective basis for suspecting [the defendant] of criminal activity sufficient to justify an investigatory stop," where the only arguably suspicious behavior by the defendant was "driving around a subdivision several times late at night," which driving pattern did not violate any local ordinance or other applicable law, and where there was not any other basis for the stop; noting further that although the police officer testified that there had been past incidents of vandalism in the area, the police had received no information that the defendant had committed any such acts); *State v. White*, 197 Ga. App. 426, 426-427 (398 SE2d 778) (1990) (explaining that the officers' observations – the defendant was sitting with two other men in a car parked in the driveway of a residence located on a street of "increased drug traffic," when a fourth person standing outside the car looked up, saw the patrol unit, got a "real surprised look, a scared look on his face," then walked away – were not sufficiently indicative of

14

criminal wrongdoing on anyone's part to justify an investigatory detention).[7] And see

generally *Barraco v. State*, 244 Ga. App. 849, 852 (2) (b) (537 SE2d 114) (2000)

("Even when other factors are present, nervous behavior of a person who has been

stopped by an armed law enforcement officer is not an unusual response and is not

---

[7] See also, e. g., *Young v. State*, 285 Ga. App. 214, 215-216 (645 SE2d 690) (2007) ("The act of driving at night, lawfully, on a public road [even] in a high crime area [with a lawnmower in the trunk] does not justify an investigative stop in the absence of additional circumstances," despite being in an area of reported thefts.) (citation and punctuation omitted); *Lyttle v. State*, 279 Ga. App. 659, 662 (632 SE2d 394) (2006) (concluding that the investigatory stop was not authorized because "the deputy did not observe [the defendant] doing anything other than driving at night, lawfully, on a public road in a high crime area"); *State v. Winnie*, 242 Ga. App. 228, 229-230 (529 SE2d 215) (2000) (holding that the police officer lacked reasonable, articulable suspicion to justify investigatory stop of the defendant's truck when officer observed the truck pull into the parking lot of a closed store at 4:00 a.m. and then begin to drive away when the officer approached). See further, e. g., *Runnells*, 357 Ga. App. at 575-579 (1) (concluding that the officer's observations – the defendant was sitting with another individual in a vehicle parked "oddly" at an apartment complex located in a "very high crime" area known for drug activity and recent robberies; a Hispanic male standing at the driver's side door, who appeared to be engaged in "some sort of contact with the driver," ran from the scene when he saw the officer's police car; the defendant got out of the car, popped its hood, then looked at the engine as though something was wrong with the car; the driver then got back into the driver's sear, popped the truck, got out again, and placed a backpack into the trunk – did not provide reasonable, articulable suspicion to justify the second-tier investigatory detention); *Adkinson*, 322 Ga. App. at 2-3 (concluding that the second-tier detention lacked specific articulable facts sufficient to give rise to a reasonable suspicion of criminal activity, where the defendant parked his vehicle at a motel located in an area known for drug activity, climbed the motel stairs, disappeared from the officer's view for a few minutes, returned to his vehicle, then drove away).

necessarily strong evidence to support either reasonable suspicion or probable cause.").

In light of the foregoing, the trial court erred by denying the motion to suppress the evidence obtained as a result of the stop. See *Hughes*, 269 Ga. at 261 (1) (explaining that because the officer lacked a reasonable, articulable suspicion to stop the vehicle, the evidence uncovered as a result of that traffic stop should have been suppressed); *Lewis*, 323 Ga. App. at 713 (reversing the denial of the motion to suppress the evidence, given "the taint of the illegal stop") (punctuation omitted); *Adkinson*, 322 Ga. App. at 1 (reversing denial of the suppression motion, where the evidence underlying the prosecution was obtained during a second-tier detention that lacked a particularized and objective basis to suspect the defendant of wrongdoing); *Holmes*, 252 Ga. App. at 287-289 (reversing conviction where evidence underlying prosecution was seized during an illegal second-tier detention of the defendant). Accordingly, the judgment of conviction is reversed.

2. Bien-Aime contends that the trial court erred by granting a non-party's motion to quash subpoena and by rejecting his claim of ineffective assistance of trial counsel. "We do not reach [these contentions], however, because we find [Bien-Aime's judgment of] conviction must be reversed due to the trial court's error in

denying his motion to suppress evidence." *Hughes*, 269 Ga. at 258. See Division 1, supra.

*Judgment reversed. Gobeil and Markle, JJ., concur*.