**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 21, 2026**

# In the Court of Appeals of Georgia

A26A0015. RANDOLPH v. THE STATE.

RICKMAN, Presiding Judge.

In this interlocutory appeal, Stanley Randolph contends that the trial court erred in denying his motion to suppress evidence obtained during what he alleges was an unlawful detention and search.[1] For the reasons set forth below, we reverse.

In determining whether a trial court properly denied a motion to suppress, appellate courts "must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment." *Westbrook v. State*, 308 Ga. 92, 96(2) (839 SE2d 620) (2020) (punctuation omitted). In addition, we generally must accept the trial court's findings of disputed facts unless they are clearly erroneous, and also

---

[1] We note that the State has failed to file a brief in this appeal.

"generally must limit [our] consideration of the disputed facts to those expressly found by the trial court." *Hughes v. State*, 296 Ga. 744, 746(1) (770 SE2d 636) (2015). But even though "we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." Id. at 750(2).

Construed under the above standard, the record shows that at the motion to suppress hearing, Officer Fields with the Athens-Clarke County police department testified that he was on routine patrol in the Nellie B. Homes area at approximately 10:30 p.m. when he observed a Chrysler sedan backed into a parking space with its headlights illuminated. Officer Holcombe, also with the Athens-Clarke County police department, had seen the same vehicle parked in the same parking space, with its headlights illuminated, approximately one hour earlier. Both officers testified that they had previously responded to that area to investigate violent crimes and drug crimes and had recovered stolen vehicles in the cul-de-sac where the sedan was parked. They had also received complaints of people loitering by the cul-de-sac.

To investigate the situation, the officers drove their vehicles into the cul-de-sac, with their headlights pointing toward the sedan, and saw two males sitting in the front seats. Officer Fields testified that the males "both made furtive movements inside of the vehicle with their arms and then put their heads against the headrest." Officer Holcombe testified that "[a]s we approached the vehicle, still in our vehicle, I could see males moving around. Appeared to be reaching down towards the floorboard of the vehicle."

The officers then exited their vehicles, approached the sedan and, after identifying the occupants, Officer Fields ran their names through a computerized record management system. The system flagged the driver, Randolph, as "known to carry a weapon," and flagged the passenger, Carlos Perez, as "known to sell and use drugs, known to carry a weapon, and known to threaten police." Officer Holcombe testified that, after hearing Perez's name, he recalled information he had received about a man named Carlos distributing drugs in the area. He then contacted the source of the information, who was not sure of a last name for Carlos but did provide a physical description that matched Perez's appearance.

After the officers had made contact with Randolph and Perez, Randolph's wife arrived on the scene, driving a Chevrolet sport utility vehicle. She told Officer Fields that Randolph and Perez had ridden together in the SUV from a laundromat back to where they were found. Officer Fields then went back to further question Randolph, who said that he had only been in the parking space for 10-15 minutes and that he had driven the sedan separately back from the laundromat while his wife and Perez rode back together in the SUV.

Given the conflicting statements given by Randolph and his wife, Officer Fields requested a K-9 officer to assist by conducting an open-air sniff of the sedan. In preparation, the officers asked Randolph and Perez to exit the vehicle. As Perez started to exit, Officer Fields saw an open backpack on the floor near Perez's feet with green, leafy material inside of it that he believed to be marijuana. The officers then placed Randolph and Perez in handcuffs and searched the backpack, the vehicle, and Randolph's person.

Randolph was subsequently indicted for possession of marijuana with intent to distribute, possession of a firearm during the commission of a felony, and possession of marijuana with intent to distribute within 1000 feet of a publicly owned housing

project.[2] He filed a motion to suppress/motion in limine, seeking to exclude any evidence obtained as a result of the above-described detention and search. Following a hearing, the trial court denied the motion. In its order, the trial court recited the facts outlined above and concluded, in part, "that the police had a reasonable and articulable suspicion that [Randolph and Perez] were involved in criminal activity to justify a brief detention and to request that the Defendants exit their vehicle." Randolph obtained a certificate of immediate review of the trial court's order, and this Court granted his application for interlocutory appeal.

Randolph contends that the trial court erred in denying his motion to suppress because the officers lacked any reasonable, articulable suspicion to justify the detention and search.

Under Georgia law, there are at least three tiers of police-citizen encounters: "verbal communications that involve no coercion or detention; brief stops or seizures that must be accompanied by a reasonable suspicion; and arrests, which can be supported only by probable cause." *State v. Copeland*, 310 Ga. 345, 351(2)(b) (850 SE2d 736) (2020) (punctuation omitted). In a first-tier police-citizen encounter, "an

---

[2] In addition to the suspected marijuana in the backpack, the officers found a firearm in the console of the sedan and United States currency on Randolph's person.

officer may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." *State v. Mrozowski*, 371 Ga. App. 501, 503-04 (901 SE2d 327) (2024) (punctuation omitted). Indeed, "[i]t is well-settled that a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter." Id. at 504 (punctuation omitted) "In a second-tier encounter, when an officer develops a reasonable, articulable suspicion that the citizen is committing or has committed a crime, the officer then has the authority to detain the citizen for an investigative stop[.]" *Copeland*, 310 Ga. at 351–52(2)(b) (punctuation omitted).

Here, Officer Fields testified that after the officers drove into the cul-de-sac, they parked their vehicles in front of the sedan in a manner that prevented it from driving away. He further testified that the occupants were not free to leave. Under the circumstances, Randolph's encounter with the officers was a second-tier investigative detention which, in order to be lawful, required the officers to have "a particularized and objective basis" for suspecting that Randolph was or was about to be involved in criminal activity. *Mrozowski*, 371 Ga. App. at 504. See *In the Interest of J. B.*, 314 Ga.

App. 678, 681(1) (725 SE2d 810) (2012) (concluding that officers' encounter with the defendant was a second-tier detention because the officers blocked defendant's exit and officer testified that appellant was not free to leave).

When considering the legality of a second-tier investigative detention, Georgia appellate courts have repeatedly recognized that "[a] person's mere presence in a high crime area does not give rise to reasonable suspicion of criminal activity, even if police observe conduct which they believe is consistent with a general pattern of such activity." *Bien-Aime v. State*, 361 Ga. App. 645, 652(1) (865 SE2d 224) (2021) (citation modified). Prior to detaining Randolph, the officers observed him and Perez sitting in a vehicle with its headlights illuminated in a parking lot located in a high crime area, making furtive movements with their arms. They did not observe Randolph commit any traffic violations or park illegally. Although the officers might have been justified in observing Randolph more closely, they lacked sufficient information to infer that Randolph, in particular, was engaged in or had engaged in criminal activity so as to provide a reasonable, articulable suspicion to justify a second-tier detention.[3] See *Hughes v. State*, 269 Ga. 258, 261(1) (497 SE2d 790) (1998)

---

[3] The additional facts relied upon by the trial court in its order were based on events that took place after Randolph was detained.

7

(concluding that officer lacked particularized and objective basis for suspecting defendant of criminal activity merely because he was driving through a high crime neighborhood late at night, picked up another man, and then drove slowly in a circular fashion through the neighborhood); *Adkinson v. State*, 322 Ga. App. 1, 3 (743 SE2d 563) (2013) (concluding that officer did not have specific articulable facts sufficient to give rise to a reasonable suspicion of criminal activity based on defendant's brief visit to a motel located in an area known for heavy drug activity); *State v. White*, 197 Ga. App. 426, 426-27 (398 SE2d 778) (1990) (finding that investigatory detention was not justified by officers' observations of defendant sitting with two other men in a parked car in a residential driveway on a street of "increased drug traffic," when a fourth person standing outside the car looked up, saw the patrol unit, got a "real surprised look, a scared look on his face," then walked away) (punctuation omitted).

Because the officers lacked a reasonable, articulable suspicion of criminal activity prior to detaining Randolph, the trial court erred by denying the motion to suppress the evidence obtained as a result of the detention and subsequent search. See *Bien-Aime*, 361 Ga. App. at 653(1) (finding that the trial court erred by denying a motion to suppress evidence obtained as a result of a stop that was not supported by

reasonable, articulable suspicion); *Lewis v. State*, 323 Ga. App. 709, 713 (747 SE2d

867) (2013) (concluding that the "taint" of the illegal stop required the suppression

of the evidence seized from defendant's car); *Adkinson*, 322 Ga. App. at 3-4

(concluding that trial court erred in denying motion to suppress where officer lacked

reasonable, articulable suspicion to justify the stop).

*Judgment reversed. Brown, C. J., and Mercier, J., concur.*