A06A1579. FLEMING v. THE STATE.
(635 SE2d 823)

PHIPPS, Judge.

Kristopher Fleming appeals from his conviction for possession of methamphetamine and other drugs, arguing that the trial court erred when it denied his motion to suppress. We find no error and affirm.

Viewed in the light most favorable to the state, the evidence shows that a concerned citizen called the Hall County Sheriff's Department with the information that there was an outstanding warrant for Fleming's arrest for a parole violation. Officer Brian Buffington, who answered the call, confirmed with a parole office that this information was true. When Buffington called the citizen back, she told him that Fleming would arrive at a certain Subway sandwich shop "at any moment," that he would be driving a silver two-door car there to meet a white GMC Yukon, and that he might be armed with a pistol and in possession of methamphetamine. The citizen also told

Buffington that Fleming was going to meet Ashley Mariscalco. Buffington knew both Mariscalco and her vehicle, a white Yukon SUV.

When their patrol car arrived at the Subway a few minutes later, the officers observed a silver two-door Mitsubishi, parked and unoccupied, next to a white Yukon with its doors open and containing three people. Buffington recognized Mariscalco at the wheel of the Yukon and saw a man in the back seat and a second man in the front passenger seat. Buffington then approached the man sitting in front, grabbed him by the wrist, called out the name "Kristopher Fleming," and demanded that he step out of the car. Mariscalco then said to Buffington, "Brian, that's not him." When Buffington relaxed his grip, Fleming spoke to Mariscalco, who then threw the car into gear and dragged the officer a short distance before leading police on a high-speed chase.

After the chase, but before Fleming's apprehension by other officers, Buffington returned to the Subway, where he and another officer performed a vehicle identification number verification on the Mitsubishi and found that it was registered to Fleming. A Subway employee at the scene told the officers that the driver of the Mitsubishi had entered the Yukon after leaving his own car. Buffington then searched the Mitsubishi. Inside the car, he found a pistol, methamphetamine, nicotinamide, and less than an ounce of marijuana. After a bench trial, the trial court convicted Fleming of possessing methamphetamine with intent to distribute and possessing nicotinamide and marijuana.

1. Though Fleming does not contest the sufficiency of the evidence against him, we have reviewed the record, and conclude that the evidence sufficed to sustain his conviction.[1]

2. Fleming contends that the trial court erred when it denied his motion to suppress. We disagree.

Where, as here, the evidence at the hearing on the motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to those undisputed facts de novo.[2]

Here, Buffington testified that he personally knew the citizen who provided the tip to be honest, law-abiding, and well-known in the community. Information received from a concerned citizen is inherently more credible and reliable than that received from an anony-

---

[1] See OCGA § 16-13-30 (a), (b); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

mous tipster; indeed, it is deemed reliable.[3] The information Buffington received was also proved accurate when he observed both described vehicles, one with its doors open, in the predicted location, and Mariscalco at the wheel of the Yukon.

When the officers had thus corroborated the information given to them, if not earlier, they gained the reasonable and articulable suspicion that the occupants of the Yukon were involved in criminal activity, and thus the authority to detain any or all of them in a brief investigative stop.[4] When Fleming fled this detention, the officers obtained probable cause not only to arrest him,[5] which they did shortly thereafter, but also to search the Mitsubishi, identified by this time as Fleming's, which he had left at the scene before getting into the Yukon.[6] Where probable cause to search a car exists, an officer need not obtain a warrant before searching it for suspected contraband.[7] Because the police had authority under these circumstances to conduct a warrantless search of Fleming's automobile, we conclude that the trial court did not err when it denied the motion to suppress.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 18, 2006.

*Barry M. Hazen*, for appellant.
*Lee Darragh, District Attorney, Alison W. Toller, Assistant District Attorney*, for appellee.

---

[3] *Hudson v. State*, 253 Ga. App. 210, 211 (558 SE2d 420) (2001).

[4] Id. at 211-212.

[5] See *Reynolds v. State*, 280 Ga. App. 712 (1) (634 SE2d 842) (2006) (even flight from improper second-tier stop gives rise to probable cause to arrest).

[6] See *Scott v. State*, 277 Ga. App. 126, 128-129 (2) (625 SE2d 526) (2006) (upholding warrantless search of a car left open and running in a parking lot when the defendant and others fled from a second car); *Jones v. State*, 195 Ga. App. 868, 869 (2) (395 SE2d 69) (1990) (totality of circumstances, including information from concerned citizen, flight of the accused, and observations by police officers, can yield probable cause to justify search of vehicle); *McKinney v. State*, 184 Ga. App. 607, 609-610 (2) (362 SE2d 65) (1987) (upholding warrantless search of a car when officers had probable cause to suspect it contained contraband even though the driver was arrested and handcuffed and the keys were taken from him before the car was searched).

[7] *Benton v. State*, 240 Ga. App. 243 (522 SE2d 726) (1999).