## A07A2240. BURGESS v. THE STATE.
### (658 SE2d 809)

PHIPPS, Judge.

Robert Burgess appeals his convictions of methamphetamine manufacturing and trafficking, contending that the trial court erred by denying his motion to suppress the drug evidence. We find no error and affirm.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[1]

So viewed, the record showed that at about 3:00 p.m. on July 26, 2002, Bobbi Willis, the sole owner of an approximately 456-acre tract of primarily wooded land, received a telephone call from a neighbor who had been helping her monitor her property. The neighbor reported that he had seen individuals "going in and out" of her property and that he thought they were growing marijuana on her land. Willis declined her neighbor's offer to "go and check" and immediately called the county sheriff's office. She complained to a narcotics investigator about trespassers upon her property and related her neighbor's report. Willis described the location and size of her property and informed the investigator where he would find a road to enter her land. Immediately after their conversation, Willis's son-in-law called

---

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (citations omitted).

the narcotics investigator and related that persons were reportedly on the property at that time. The son-in-law agreed to meet the officers at the property.

At about 3:30 p.m., the narcotics investigator and his partner arrived at a road that served as an entry point upon Willis's property. They were wearing plain clothes, with law enforcement badges around their necks. They asked a man they saw there whether he was Willis's son-in-law. The man answered that he was the person who had reported to Willis's son-in-law individuals being upon Willis's property. The man reported further to the investigators that he had recently seen two people drive upon the property in a black pickup truck and directed the investigators to a dirt, logging road on which the truck had traveled. Traveling upon Willis's property, the investigators noted "No Trespassing" signs on both sides of the road.

Following the man's direction, the investigators came upon a parked, unoccupied, black pickup truck. It was blocking the roadway. The investigators got out of their vehicle and saw in the truck's bed "a garden hoe, some green stakes, metal stakes, and a pump sprayer." One of the investigators testified, "[T]hese are tools used to grow marijuana. They use the metal stakes to keep the plants straight and use the hoe to till the ground." Based upon two soda cans the officers observed in a cup holder on the dash inside the truck's cab, the officers suspected that there were at least two persons further in the woods.

The investigators saw tracks that appeared to have been made by a four-wheeler that began at the truck and led deeper into the woods. On foot, they followed the tracks for a few hundred yards. They then heard the sound of a four-wheeler coming down a trail in their direction and therefore crouched behind bushes. The four-wheeler was being slowly driven by a man, later identified as Burgess. Walking closely behind Burgess was another man, later identified as Dewey Wright.

When Burgess and Wright neared the location of the investigators, the investigators abruptly came out of the bushes, identified themselves as law enforcement officers with the sheriff's office, commanded the two men to halt, and ordered Burgess off the four-wheeler. Neither man complied. Wright, who was carrying a white container that appeared to be a tea jug, turned around and fled back up the trail. One of the investigators grabbed Burgess off the four-wheeler and put him on the ground before chasing Wright. The other investigator pointed his shotgun at Burgess and commanded him to remain still because he did not know whether other individuals also were in the woods. The investigator chasing Wright saw him dart into a wooded area and then bend over. When he ordered Wright to put his

hands up, Wright did so, but had nothing in them. The investigator brought Wright back to the location where his partner was holding Burgess.

A search of Burgess revealed a key to the black pickup truck, "fresh" methamphetamine in a plastic bag in his back pocket, and a straw cut in a manner typical for inhaling or ingesting methamphetamine. The investigators found "fresh" methamphetamine in a pouch attached to the four-wheeler. The investigator who had apprehended Wright went back to the location where he had observed him bend over and found a white one-gallon tea pitcher under a log. The pitcher contained "fresh" methamphetamine. The investigators called for assistance.

Once help arrived, the two narcotics investigators searched along the route from which Burgess had driven the four-wheeler. They observed nearby what was determined to be a clandestine methamphetamine lab containing essentially all the materials, equipment, and ingredients necessary to manufacture methamphetamine.

Burgess contests the admission of the drug evidence, arguing that it stemmed from an unconstitutional seizure of his person because his arrest was supported by neither a warrant nor probable cause.

> A warrantless arrest is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense. Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense.[2]

"The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility."[3]

"While probable cause is required for a warrantless arrest, a person may be lawfully seized for purposes of a brief investigation when only a reasonable and articulable suspicion exists."[4] In this case, during her telephone call with the narcotics investigator, Willis identified herself as the owner of specific property, related a report about marijuana being grown thereon, and gave her permission for entry onto her property to investigate whether trespassers were so

---

[2] *Johnson v. State*, 258 Ga. 506, 507 (2) (371 SE2d 396) (1988) (citations and punctuation omitted).

[3] *Brown v. State*, 269 Ga. 830, 831-832 (2) (504 SE2d 443) (1998) (citation and punctuation omitted).

[4] *Holsey v. State*, 271 Ga. 856, 861 (6) (524 SE2d 473) (1999) (footnote omitted).

engaged. The investigator also received a report from Willis's son-in-law that such individuals were currently on the property. Within about 30 minutes, the narcotics investigator and his partner arrived on the property and noted "No Trespassers" signs. They came upon an individual who claimed to have alerted Willis's son-in-law about suspicious activities on the property, and that person further alerted them that a black pickup truck with two occupants had recently entered the property. The investigators found a black pickup truck nearby, unoccupied, with two soda cans in a cup holder on the dash, with tools in its bed useful in harvesting marijuana, and with four-wheeler tracks leading from it. Shortly thereafter, they spotted Burgess on Willis's property, riding a four-wheeler toward the black truck. Wright was accompanying him on foot.

When the investigators thus corroborated the property owner's report, they gained reasonable and articulable suspicion that the two men they encountered were involved in criminal activity (at least criminal trespass)[5] and therefore had the authority to detain them in a brief investigative stop.[6] They identified themselves as law enforcement officers and ordered the men to halt. Burgess did not comply; his companion attempted to flee on foot; and Burgess did not get off the four-wheeler as commanded. "Flight can be a significant factor in determining probable cause."[7] In this case, the totality of the circumstances supported a finding of probable cause to arrest Burgess without a warrant.[8] Therefore, the trial court did not err in denying Burgess's motion to suppress.[9]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 4, 2008.

*Donna A. Seagraves*, for appellant.
*Timothy G. Madison*, District Attorney, Carlock, Copeland, Semler & Stair, *Hugh M. Ruppersburg*, for appellee.

---

[5] See OCGA § 16-7-21.

[6] See *Fleming v. State*, 281 Ga. App. 207, 208-209 (2) (635 SE2d 823) (2006); *Overand v. State*, 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999).

[7] *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996) (citations omitted); see also *Lee v. State*, 270 Ga. 798, 803 (7) (514 SE2d 1) (1999) (noting that flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search).

[8] See generally *Johnson*, supra; *Fleming*, supra; *Adams v. State*, 263 Ga. App. 694, 695 (1) (589 SE2d 269) (2003).

[9] *Fleming*, supra at 209.