## A09A1437. BISHOP v. THE STATE.
(682 SE2d 201)

MIKELL, Judge.

Brian Roger Bishop entered a plea pursuant to *North Carolina v. Alford*[1] to possession of tools for the commission of a crime and loitering and prowling in the Superior Court of Rockdale County. Bishop received an aggregate sentence of two years to serve under the First Offender Act. Bishop filed a motion to withdraw his guilty plea, arguing that he should be allowed to do so because his trial counsel was ineffective for failing to file a motion to suppress evidence seized during a stop of Bishop's vehicle. The trial court entered an order denying the motion, from which Bishop appeals. In his sole enumeration of error, Bishop maintains that the trial court erred when it denied his motion to withdraw.

> A ruling on a motion to withdraw a guilty plea lies within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of such discretion. When the validity of a guilty plea is challenged, the state bears the burden of showing affirmatively from the record that the defendant offered his plea knowingly, intelligently, and voluntarily. However, if the motion to withdraw is based on an ineffective assistance of counsel claim, the defendant bears the burden of showing that, had it not been for the attorney's deficient representation, a reasonable probability exists that he would have insisted on a trial.[2]

Where the failure to file a motion to suppress is the basis for the ineffectiveness claim, "the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[3] Because Bishop has not made a strong showing that the evidence would have been suppressed, we affirm.

Deputy Renny Shirley of the Rockdale County Sheriff's Department testified that at approximately 10:30 a.m. on Sunday, June 29, 2008, he was patrolling the Dogwood Circle area, where people illegally dump trash and leave abandoned vehicles. There had been a rash of catalytic converter thefts in the area, and the neighboring businesses were closed at the time. Shirley testified that he saw a minivan driving out of the driveway of a vacant lot. He did not know how long the vehicle had been in the lot; and he did not see anyone

---

[1] 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).

[2] (Citation omitted.) *Hammett v. State*, 288 Ga. App. 255 (653 SE2d 852) (2007).

[3] (Punctuation omitted.) Id. at 256 (2), citing *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004).

discard anything while there. Nonetheless, as he could think of no legitimate reason for the vehicle's presence in the lot, Shirley decided to stop the van because he suspected that its occupant had been dumping trash illegally.

Shirley motioned to the driver, Bishop, to stop as the minivan passed. According to Shirley, Bishop explained that he had spent the night in the lot, after arguing with his wife, and Bishop denied that he dumped anything on the lot. Shirley asked Bishop if he would walk back on the property, and Bishop agreed to do so. Shirley did not observe any trash where Bishop's vehicle had been parked, but as they walked back to the vehicle, he asked Bishop for consent to search his vehicle. Bishop consented. Shirley found a reciprocating saw, large pliers, and gloves in the vehicle and arrested Bishop.

Trial counsel testified that he initially filed a skeletal motion to suppress in the case, but that after visiting the site and reviewing the police report, he determined that a motion to suppress would have been unsuccessful, particularly since Bishop did not dispute that he consented to the search. Additionally, trial counsel testified that he had personal knowledge of several catalytic converter thefts in the area as a result of his relationship with the owner of a nearby business. Bishop testified that trial counsel never talked with him about filing a motion to suppress and that he would not have entered a guilty plea if the evidence could have been suppressed.

In its order denying Bishop's motion to withdraw his guilty plea, the trial court concluded that Deputy Shirley had a reasonable articulable suspicion to warrant the stop; and therefore, Bishop failed to make the "strong showing" that the evidence found in his vehicle would have been suppressed. Bishop maintains that the stop was not authorized because the fact that he was exiting a vacant lot did not give the officer reasonable articulable suspicion to stop him.

Our Supreme Court has stated that the law in this area is clear:

> [A]lthough an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. This demand for specificity in the information upon

which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.[4]

In the instant case, Officer Shirley testified that he stopped Bishop because he thought that Bishop had dumped trash on the vacant lot, which would have been a violation of a county ordinance that the officer was authorized to enforce. Additionally, Shirley testified about recent catalytic converter thefts in the area and also explained that he had attached a list of ten cases involving vehicles that had been stolen or burglarized in the area to the police report filed in connection with the instant case.

> A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. The "totality of the circumstances" test allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.[5]

Although an investigative stop would not generally be authorized merely by the defendant's act of driving lawfully late at night in a high crime area on a public road,[6] given the totality of the circumstances here, Officer Shirley was authorized to stop Bishop's car. Thus, the items seized were not tainted by an unlawful stop and consequently would not have been suppressed. "As a matter of law, therefore, [Bishop] cannot make the requisite strong showing that, had trial counsel filed a timely motion, evidence seized as a result of the investigatory stop would have been suppressed. Accordingly, [Bishop's] ineffective assistance claim fails."[7]

The cases cited by Bishop, *Howden v. State*[8] and *State v. Winnie*,[9] do not warrant a different conclusion. Bishop argues that these cases support his position that the stop was not justified, but both cases

---

[4] (Citation and punctuation omitted.) *Hughes v. State*, 269 Ga. 258, 259-260 (497 SE2d 790) (1998), citing *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994).

[5] (Punctuation and footnotes omitted.) *Esposito v. State*, 293 Ga. App. 573, 576 (667 SE2d 425) (2008) (stop not arbitrary or harassing where officer inferred from his training, experience, and common sense that the defendant, looking to engage in criminal activity, was "casing" a parking lot the officer was hired to secure).

[6] But see generally *Hughes*, supra at 261 (investigative stop not authorized where only circumstances are that defendant was driving at night lawfully on a public road in a high crime area); *Young v. State*, 285 Ga. App. 214, 215-216 (645 SE2d 690) (2007) (same); *Lyttle v. State*, 279 Ga. App. 659, 661 (632 SE2d 394) (2006) (same).

[7] (Footnote omitted.) *Arnold v. State*, 253 Ga. App. 307, 309 (1) (560 SE2d 33) (2002).

[8] 240 Ga. App. 139 (522 SE2d 279) (1999).

[9] 242 Ga. App. 228 (529 SE2d 215) (2000).

are factually distinguishable from the instant case. In *Howden*, the defendant was stopped late at night after exiting a deserted parking lot in an area known for criminal activity.[10] We reversed the denial of the defendant's motion to suppress, finding that the officer's testimony proved "only that defendant's warehouse [was] in an area known for criminal activity and that a van was leaving this warehouse late at night."[11] We specifically noted therein that the officer did not articulate any particular fact indicating that the defendant was or was about to be engaged in criminal activity nor did he explain that crimes had been committed in the area.[12] In the instant case, however, additional circumstances were present. Shirley testified that he thought Bishop had engaged in illegal dumping and explained that the crimes of illegal dumping, theft, and burglary had been committed in the area.

In *Winnie*, an officer testified that he saw a truck enter and exit a closed facility's parking lot, and the officer decided to initiate a stop because the occupants could have been there to commit a burglary.[13] The trial court granted the motion to suppress, relying on the fact that the truck had begun to exit the parking lot when the officer approached.[14] We affirmed, noting that there was no claim that the truck had been parked or out of the officer's sight long enough for a burglary to occur. We reasoned that even if the officer suspected an attempted burglary, the basis for his suspicion disappeared when the truck started to leave the parking lot.[15] Here, the officer did not see Bishop enter the lot; rather, he only saw him exiting a lot where people illegally dumped trash. It was this factor that prompted the officer's suspicion, particularly given his additional knowledge of the area. The officer testified unequivocally that he stopped Bishop because he thought that Bishop had dumped trash on the lot. Therefore, unlike in *Winnie*, there was no evidence here from which the inference could be made that the reason for the stop dissipated with Bishop's exit from the lot.

As stated earlier, when an ineffectiveness claim is based on the failure to file a motion to suppress, "the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[16] Bishop has not done so. Therefore, the trial court did not abuse its discretion when it denied

---

[10] *Howden*, supra at 140.

[11] Id. at 141.

[12] Id. at 140.

[13] *Winnie*, supra at 229.

[14] Id. at 230.

[15] Id.

[16] *Hammett*, supra.

Bishop's motion to withdraw his guilty plea.
*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JULY 16, 2009.

*Wystan B. Getz*, for appellant.
*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney*, for appellee.