S10G0158. MILLER v. THE STATE.
(702 SE2d 888)

MELTON, Justice.

This case regards the trial court's grant of Ashaunte Miller's motion to suppress evidence of cocaine and a firearm found in his possession after he was stopped by Officer James Williams. In *State v. Miller*, 300 Ga. App. 55 (684 SE2d 80) (2009), the Court of Appeals reversed the trial court's grant of the motion to suppress after determining that a de novo standard of review applied to the State's appeal. We granted certiorari to consider the propriety of this holding. For the reasons set forth below, we find that the Court of Appeals erred by applying a de novo standard of review, and, as a result, we reverse.

1. In *Tate v. State*, 264 Ga. 53 (440 SE2d 646) (1994), we discussed three fundamental principles which must be followed when conducting an appellate review of a motion to suppress.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the

defendant and their application to this trial court's order would demand that the court's order be affirmed.

(Citations, punctuation and footnote omitted.) Id. at 54 (1).[1]

To properly follow the first principle, we must focus on the facts found by the trial court *in its order*, as the trial court sits as the trier of fact. Those facts are as follows:

The evidence shows that on July 30, 2008, a team of officers from the Savannah-Metropolitan Police Department's TRAP unit were driving around the westside of Savannah on a general patrol of the area for drug activity. The officers were traveling along the 600 block of west 34th Street when they saw a group of six or seven black men standing near a vehicle in a vacant lot. One of the men was applying tinting to the car's window. The car had no visible license plate. The officers, who wore vests identifying them as law enforcement, stopped at the scene, exited their van and approached the group of men. [Miller], who was part of the group standing near the vehicle, walked away from the scene and headed in the direction of his mother's home, which was next to the vacant lot. Officer James Williams followed [Miller] and ordered him not to move. Officer Williams eventually apprehended [Miller] and wrestled him to the ground. After Officer Williams secured [Miller] on the ground, he observed a gun sticking from [Miller's] pocket. Officer Williams later conducted a pat-down and found a plastic bag containing a substance, confirmed by subsequent crime lab tests to be cocaine, in [Miller's] pants pocket.

Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Based on the trial court's order, it is evident that the trial court questioned the credibility of the bases provided for the stop by Officer Williams. In fact, just before holding that Officer Williams stopped Miller based on a "mere hunch" and only "general suspicion," the trial court explicitly stated: "In addition, the Court notes that although Officer Williams testified recently at the suppression hearing that these

---

[1] A "clearly erroneous" standard of review applies in this case. "On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." (Citation and punctuation omitted.) *Stringer v. State*, 285 Ga. 842, 843 (2) (684 SE2d 590) (2009).

facts were the basis for the stop, he did not mention the window tinting or the missing license plate in the incident report he filed or during his testimony at defendant's preliminary hearing." Later in its order, the trial court again explicitly addresses the unreliability of Officer Williams' testimony. The trial court's order states:

> At the motion hearing, Officer Williams testified that another man ran away from the scene when the officers first arrived and that he focused his attention on defendant who began running towards the house next to the vacant lot. At the preliminary hearing, Officer Williams testified, however, that defendant was the only person who attempted to leave the scene after the officers exited their vehicle. Thus, it is questionable whether Officer Williams was aware of this other person's flight when he began pursuing defendant.

This is overtly a credibility determination. Officer Williams' version of events given at the motions hearing was explicitly found to be "questionable" due to its inconsistency with his prior testimony. This credibility finding drew into question the only basis upon which Officer Williams maintained that his stop of Miller was objectively reasonable. See *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996) (*Terry* stop analysis is based on objective criteria, not on subjective motive of police).

Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. In this case, based on the findings of fact and the determinations of credibility described above, the trial court found that

> Officer Williams had simply no objective and particularized basis to pursue, apprehend and wrestle [Miller] to the ground. Indeed, the record shows that Officer Williams pursued [Miller] and wrestled him to the ground *prior* to observing [Miller's] gun or acquiring any objective basis to believe that [Miller] may have violated a law.

(Emphasis in original.) As a result of this finding, the trial court granted Miller's motion to suppress. This Court, therefore, has an obligation to construe the evidence most favorably to support this finding and judgment. The record supports the trial court's findings that, at the time that Officer Williams stopped him, Miller was merely standing next to a car in a vacant lot with a group of other men, while one of the men applied tint to the car's windows. Officer Williams never saw Miller do anything "illegal" before he stopped

him, and, given Officer Williams' inconsistencies in articulating his reasons for apprehending Miller, it cannot be said that the trial court erred in finding that the stop was based only on a mere hunch. As a result, the trial court's decision to grant the motion to suppress was not clearly erroneous and must be affirmed. Id.

2. The dissent espouses the reversal of the trial court's grant of Miller's motion to suppress by inappropriately reviving the same analysis rejected by this Court in *Tate*, supra, for its failure to follow each of the fundamental principles set forth above.[2] The dissent violates the first principle of appellate review by focusing on its own assessment of the facts, rather than the facts set forth by the trial court. As in its dissenting opinion in *Tate*, the dissent maintains that it is allowed to premise its ruling on evidence that all of the officers stopped Miller in concert because some of the officers testified to this effect and this testimony was undisputed.[3] Such reliance on undisputed testimony to recharacterize the trial court's order was rejected in *Tate*, as the "trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." Id. at 56 (3). Accordingly, the trial court may have chosen not to include any mention of the evidence forming the basis of the dissent's decision because the trial court *rejected* that portion of the officers' testimony. Therefore, upon consideration of only the first principle of appellate review, the foundation for the entirety of the dissent's argument fails, as it is not allowed to base its review on undisputed evidence which is not considered in the trial court's order and which is contrary to the trial court's ruling.

The dissent's analysis also violates the second principle of appellate review, as there is no question that credibility determinations played a significant part in the trial court's ruling. The trial court explicitly questioned the bases presented as the purpose for the

---

[2] The analysis employed by the Court of Appeals to arrive at a de novo standard of review fails for similar reasons.

[3] The trial court neither found that the officers stopped Miller in concert nor that there was any communication between the officers prior to the stop. Only the dissent finds these facts to be true. The trial court actually found, not that all of the officers ordered Miller to stop, but that Officer Williams ordered Miller not to move after the group of officers approached the group of men around the car in the vacant lot. As the dissent's independent findings of fact which contradict the trial court's findings of fact are inappropriate, the dissent's application of law adjusted specifically to its own independent findings of fact is equally inappropriate. Therefore, given the findings of fact made *by the trial court*, this is not a case in which the collective knowledge of multiple police officers form the basis for probable cause, as there was no finding that there was a sufficient degree of communication between multiple officers regarding the apprehension of Miller. See *Burgeson v. State*, 267 Ga. 102, 105 (475 SE2d 580) (1996) (explaining that probable cause for arrest "can rest upon the collective knowledge of the police when there is some degree of communication between them"). In fact, the trial court may have completely rejected any such testimony to the extent that it exists in reaching its conclusion.

stop of Miller. This credibility question lies at the very core of the trial court's ruling, and it should not be negated by this Court. Moreover, the dissent's analysis requires it to make credibility determinations not made by the trial court. The dissent, itself, finds the testimony from other officers at the scene of Miller's stop to be credible, and it then imposes this credibility determination onto the ruling of the trial court. Such actions are clearly improper.

Additionally, the dissent maintains that explicit credibility determinations contained in the trial court's order may be discounted as irrelevant based on the dissent's independent selection of evidence that should not be considered in the first place. To fuse onto the trial court's ruling its own findings of fact and credibility regarding the testimony of the other officers that the stop was committed by all of the officers in concert, the dissent paraphrases *Silva v. State*, 278 Ga. 506 (604 SE2d 171) (2004), for the following proposition: "The only conclusion that can be reached on review is that the trial court credited the officer[s'] testimony, . . . and decided the motion of an issue of law rather than on any issue of conflicting evidence." This statement is illogical under the facts and judgment of this case, and it violates all three appellate standards of review at once. Given the trial court's ultimate ruling, it is much more logical to contend that the trial court may have discredited and rejected the very evidence on which the dissent now relies. The trial court's order explicitly draws into question the bases provided for the stop by Officer Williams, and this skepticism could have easily been extended to the testimony of the other officers as well. By finding otherwise, the dissent culls the record for evidence not relied upon or mentioned in the trial court's order (violating the first principle), makes its own credibility determination regarding this evidence (violating the second principle), and then construes this evidence in a manner least favorable to upholding the judgment of the trial court (violating the third principle).

Motions to suppress, by their nature, often turn on difficult questions of credibility and specific findings of fact. The principles of appellate review applicable to these motions were set forth to ensure that, in difficult cases such as this one, the trial court's resolution of these issues would be given deference, as only the trial court actually sees the witnesses and hears their testimony. Staying true to these principles, a clearly erroneous standard of review must be applied in this case, and the trial court's decision to grant Miller's motion to suppress must be affirmed.

*Judgment reversed. All the Justices concur, except Carley, P. J., Hines and Nahmias, JJ., who dissent.*

CARLEY, Presiding Justice, dissenting.

The majority inexplicably disregards the trial court's findings with regard to the entire team of police officers involved in the investigatory stop of Miller, and instead considers only the findings with respect to Officer Williams by relying primarily on the trial court's supposed determination of his credibility.

The trial court itself recognized that it could not focus solely on Williams' knowledge and testimony. The order of the trial court shows that it, unlike the majority, understood that there exist two possible grounds on which the stop of Miller could be justified. That investigatory stop was constitutional if either Williams or the other officers had the requisite articulable suspicion. As the statement of facts quoted by the majority makes clear, the trial court found that the entire team of officers saw the group of men standing near a car in the vacant lot, the absence of a license plate on the car, and the tinting of the windows, and that those officers, not just Williams, stopped at the scene, exited their van, and approached the group of men. The trial court also specifically found that the observations of "[t]he officers" "do not rise to the level of a reasonable, articulable suspicion" justifying an investigatory stop. Contrary to the majority, the trial court did not hold that "Officer Williams stopped Miller based on a 'mere hunch' and only 'general suspicion[.]'" Actually, the trial court did not mention Williams at that point and instead drew the general conclusion that "[t]he stop was based on a mere hunch" and "general suspicion" and immediately explained by making further specific findings regarding the observations and knowledge of the entire team of officers.

The trial court's comment in a footnote regarding Williams' omission of any mention of the window tinting and missing tag in his incident report and previous testimony is not dispositive. That notation does not constitute an actual determination of Williams' credibility in that regard. More importantly, the trial court explicitly accepted the unimpeached and consistent testimony of the other officers regarding the tinting and tag. That testimony by the other officers was relevant, and could therefore be addressed by the trial court, because the undisputed evidence shows that the officers immediately told the men not to move. *State v. Miller*, 300 Ga. App. 55, 56 (684 SE2d 80) (2009). The group of officers, and not just Williams, decided to effectuate an investigative stop, and all of them announced the stop to the suspects prior to Officer Williams' actions in stopping Miller. See *Burgess v. State*, 290 Ga. App. 24, 27 (658 SE2d 809) (2008). It is clear that the trial court implicitly accepted this undisputed evidence because, otherwise, its findings with respect to the observations and knowledge of the entire team of officers would have been irrelevant and indeed nonsensical. It is well

established that an appellate court, when reviewing a ruling on a motion to suppress, must accept the implicit as well as the explicit findings of the trial court unless they are clearly erroneous. *Brantley v. State*, 226 Ga. App. 872, 873 (2) (a) (487 SE2d 412) (1997); *Garcia v. State*, 207 Ga. App. 653, 654 (1) (a) (428 SE2d 666) (1993). See also *State v. Davis*, 261 Ga. 225, 226 (404 SE2d 100) (1991). Compare *Tate v. State*, 264 Ga. 53 (440 SE2d 646) (1994) (where, unlike here, the trial court identified the credibility of the sole officer present at the stop as the key issue).

Since Williams' actions clearly were predicated on the preceding actions of and instructions from the entire group of officers, the appellate court, like the trial court, "must look to the knowledge of [those officers] at the time [they] issued those instructions to determine whether the police had authority to seize [Miller]." *Brooks v. State*, 206 Ga. App. 485, 487 (2) (425 SE2d 911) (1992).

> As the Supreme Court has repeatedly noted, common sense and practical considerations must guide judgments about the reasonableness of searches and seizures. [Cits.] Here, common sense suggests that, where law enforcement officers are jointly involved in executing an investigative stop, the knowledge of each officer should be imputed to others jointly involved in executing the stop. [Cits.] Investigative stops generally occur in a dynamic environment marked by the potential for violence. Officers who jointly make such stops rarely will have an opportunity to confer during the course of the stop. Basing the legitimacy of the stop solely on what the officer who first approaches the suspect knows, rather than on the collective knowledge of all of the officers who participate directly in carrying out the stop, thus makes little sense from a practical standpoint.

*United States v. Cook*, 277 F3d 82, 86 (II) (1st Cir. 2002) (also noting that taking "into account only the knowledge of officers present at the scene and directly involved in effectuating a stop, is unlikely to encourage illegal police activity"). By examining the knowledge of the other officers, the trial court was plainly evaluating their authority to detain the men in the vacant lot prior to Williams' attempt to enforce the investigative stop. Even if the trial court did resolve any inconsistency in Williams' testimony, it clearly credited other testimony regarding the reasons for the investigative stop, and no such inconsistency affected its ruling. *Silva v. State*, 278 Ga. 506, 507 (604 SE2d 171) (2004). Compare *State v. Guyton*, 295 Ga. App. 786, 787 (673 SE2d 290) (2009); *State v. Hester*, 268 Ga. App. 501, 504 (602 SE2d 271) (2004).

Careful examination of the order on appeal reveals that the trial court evaluated the observations of all of the officers and decided that they amounted to a mere hunch and did not rise to the level of a reasonable, articulable suspicion.

> The only conclusion that can be reached on review is that the trial court credited the officer[s'] testimony, . . . and decided the motion on an issue of law rather than on any issue of conflicting evidence. The de novo standard of review was the correct one to be applied by the Court of Appeals.

*Silva v. State*, supra at 508.

The only possible conclusion from application of that correct standard is that the police officers had a lawful basis for their investigative detention. Miller separately analyzes each factor on which the Court of Appeals relied. However, in making de novo determinations of reasonable suspicion,

> reviewing courts . . . must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. [Cit.] This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Cits.]

*United States v. Arvizu*, 534 U. S. 266, 273 (122 SC 744, 151 LE2d 740) (2002).

In this case, the undisputed testimony showed that the appearance of stolen cars is often altered by quickly and temporarily tinting the windows. Consistent with such concealment of a theft is the evidence of a missing tag and the testimony that the group of men was standing around the car in a vacant lot during the process of tinting. Indeed, the uncontroverted evidence shows that the group here was standing "around," and not merely "near," the automobile. Thus, the Court of Appeals properly relied on the officers' undisputed testimony that, based on their experience, tinting the outside of windows "was often performed on stolen cars, this car was being worked on in a vacant lot, it had no tag on it, and the men were gathered around the car in a way that could be construed as trying to conceal a stolen automobile." *State v. Miller*, supra at 58. The undisputed testimony was that all of these circumstances caused the officers to suspect illegal activity, based upon their experience and training. That suspicion was not required to be focused exclusively

on a single individual, and instead may be established by evidence of possible wrongdoing by at least one of a discrete group of individuals at a particular time and place. *Drake v. County of Essex*, 646 A2d 1126, 1128-1130 (N.J. Super. 1994).

> A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct. [Cit.] Undoubtedly, each of these factors alone is susceptible to innocent explanation, and some factors are more probative than others.

*United States v. Arvizu*, supra at 277. Taken together, however, under the "totality of the circumstances" test, the factors found by the trial court and relied upon by the Court of Appeals sufficed to form a particularized and objective basis for the officers to detain the group of men for a brief investigation and, therefore, that detention was reasonable within the meaning of the Fourth Amendment. See *United States v. Arvizu*, supra at 277-278; *Bishop v. State*, 299 Ga. App. 241, 243 (682 SE2d 201) (2009). Compare *Young v. State*, 285 Ga. App. 214, 215-216 (645 SE2d 690) (2007); *Black v. State*, 281 Ga. App. 40 (635 SE2d 568) (2006).

Accordingly, the Court of Appeals was correct in concluding that the officers made a valid stop under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968) and that Miller was not free to leave, and in reversing the trial court's grant of the motion to suppress. I therefore respectfully dissent to the reversal of the Court of Appeals' judgment.

I am authorized to state that Justice Hines and Justice Nahmias join in this dissent.

DECIDED NOVEMBER 22, 2010.

*Michael L. Edwards*, for appellant.
*Larry Chisolm, District Attorney, Christine S. Barker, Assistant District Attorney*, for appellee.