**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 17, 2019**

# In the Court of Appeals of Georgia

A18A1630. MATHIS v. THE STATE.          GS-051

A18A1631. GRESHAM v. THE STATE.          GS-052

GOSS, Judge.

Tiffany Mathis and Marshawn Gresham were both charged with one count of forgery in the first degree and five counts of forgery in the second degree (OCGA § 16-9-1), and with three counts of identity fraud (OCGA § 16-9-121). Gresham was also charged with one count of false statement (OCGA § 16-10-20). We granted Mathis and Gresham's applications for interlocutory review of the trial court's denial of their motions to suppress evidence seized during a vehicle search following a traffic stop. For the reasons that follow, we affirm.

When reviewing the grant or denial of a motion to suppress, we apply three fundamental principles as defined by our Supreme Court:

First, when a motion to suppress is heard by a trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010). The trial court's application of the law to undisputed facts is subject to de novo appellate review. *Registe v. State*, 292 Ga. 154, 156 (734 SE2d 19) (2012).

The evidence presented at the motion to suppress hearing shows that on March 1, 2017, employees at a Kohl's store in Dalton, Georgia, called 9-1-1 and reported that a man, later identified as Gresham, had come into the store, immediately loaded up a cart with expensive merchandise, valued in a police report at more than $940, and appeared to be planning either a "push out" – which occurs when someone enters a store, quickly selects expensive items, and then leaves without paying for them – or credit card fraud. The 9-1-1 call was played for the trial court. During the 9-1-1 call, Billy Myers, a Kohl's loss prevention associate and a former law enforcement officer, told Officer Blake Edwards of the Dalton Police Department that Gresham

2

was requesting a credit card account look-up, had presented Idaho identification, and had to check his phone to give the Kohl's cashier the personal information necessary to look up his account. An account look-up typically occurs when a person does not have his credit card with him, but wants the cashier to look up the account information so that a purchase can occur. The information Gresham would have needed from his phone included his name, birthdate and Social Security number. Edwards testified that typically, rather than having this information on a cell phone, a person would have a paper receipt obtained from a store kiosk indicating that he had been approved for a store credit card, and this personal information would be on that receipt.

Edwards asked Myers to check whether the credit card was in a different name than the identification, but Myers said this could take 15 or 20 minutes, by which time Gresham would be gone. Myers then instructed the cashier to tell Gresham that the account look-up system was down. Upon learning this, Gresham left the store without any merchandise, and got in a waiting car driven by a female companion, later identified as Mathis. As the pair drove toward another store, Edwards made a traffic stop, identifying the car by license plate information Myers gave him. During the stop, Edwards saw a license lying on the console next to Mathis. He asked to see it,

and she gave it to him. He later determined that it was fraudulent, and, when executing a search warrant on Mathis's vehicle, found other fraudulent identification cards in both women's and men's names. The police report states that Gresham "lied" about possessing fraudulent identification, and a false identification was later found in his underwear. The vehicle also contained numerous items purchased on credit at various stores. At the hearing, Edwards identified Gresham and Mathis as the people in the vehicle that he stopped.

On appeal, Gresham and Mathis argue that the traffic stop Edwards conducted was not supported by reasonable, articulable suspicion. We disagree.

> An officer may conduct a brief investigatory stop when specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. In determining whether the facts authorized the stop, a court must take the totality of the circumstances into account and determine whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.

(Punctuation omitted.) *Sayers v. State*, 226 Ga. App. 645, 646 (487 SE2d 437) (1997), citing *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994) and *Terry v. Ohio*, 392 U. S. 1, 21 (88 S.Ct. 1868, 20 LE2d 889) (1968).

While this Court has recognized "the elusive nature of what is deemed sufficient to authorize the police to stop and detain a citizen[,]" *State v. Causey*, 246 Ga. App. 829, 832 (1) (b) (540 SE2d 696) (2000) (citation omitted), we have drawn guidance from the United States Supreme Court in *United States v. Cortez*, 449 U. S. 411, 417-418 (101 S. Ct. 690, 66 LE2d 621) (1981). In *Causey*, this Court recognized that articulable suspicion involves the totality of the circumstances, which is based upon a two-part test. That test is comprised of: (1) information gathered from objective observations, police reports, and "consideration of the modes or patterns of operation of certain kinds of lawbreakers" as determined by the inferences and deductions of trained police officers applying "common sense conclusions about human behavior" viewed from the perspective of a reasonable police officer; and (2) "that during the process of analyzing the facts as described in the first element, a suspicion must arise that the particular individual being stopped is engaged in wrongdoing." (Citations and punctuation omitted). *Causey*, 246 Ga. App. at 832-833 (1) (b).[1]

---

[1] In analyzing the instant case, "we focus on the reasonableness of the stop, without regard to the presence of [false identification] which was ultimately established. The fact that [a crime] is in fact discovered will not support an otherwise invalid stop." (Citation and footnote omitted.) *Causey*, 246 Ga. App. at 833 (1) (b).

In the instant case, Edwards, the only witness at the motion to suppress hearing, testified that he had experience investigating identity fraud crimes, and that he knew Myers as a reliable source of information and had worked with him before. Edwards acknowledged that a person can request an account look-up and still be abiding by the law. He testified that no traffic violation prompted him to initiate the stop, and that when he made the stop, he had no information indicating the Idaho identification presented for the credit card look- up was invalid, or that anything was amiss with the credit account. Nonetheless, Edwards testified that the sector of Dalton in which he worked involved numerous thefts and shopliftings, and that the behavior Myers observed matched a pattern of suspicious behavior. While mere conformity with a general pattern of behavior is not sufficient to justify a stop, there was evidence here to support the trial court's finding that the officer had a particularized suspicion of wrongdoing. See *Williams v. State*, 327 Ga. App. 239, 244 (758 SE2d 141) (2014) (reversing denial of motion to suppress where officer testified that *everyone* entering and leaving a known drug house was stopped, and defendant "was stopped solely for this reason" rather than for any objective or particularized suspicion that *defendant himself* was engaged in criminal activity). Specifically, Edwards testified that, based on his training and experience, Gresham's hasty choosing of high-value items, his

6

out-of-state identification, his need to look up what was ostensibly his own basic personal information on his phone, and the fact that he had a driver waiting for him outside, all made Edwards suspicious that Gresham was engaged in identity fraud, credit card fraud, shoplifting or theft.[2] Even where "[a]ll of this conduct was by itself lawful, but it also suggested that the individuals were engaged in criminal activity, *Terry* [has] recognized that the officers could detain individuals to resolve the ambiguity." *Causey*, 246 Ga. App. at 833 (1) (b), citing *Illinois v. Wardlow*, 528 U. S. 119, 125 (120 S.Ct. 673, 145 LE2d 570) (2000). See *Causey*, 246 Ga. App. at 833 (1) (b) (finding that officers had reasonable, articulable suspicion to stop defendant who was seen looking into parked cars in an area where there was theft from a vehicle the previous night, and who fled when he saw police).

As outlined above, the totality of the circumstances supports a finding that the officer had a particularized, objective basis for suspecting criminal activity and for stopping the vehicle in which Gresham and Mathis were riding. See *Miller*, 288 Ga. at 286-289 (1), and *Sayers*, 226 Ga. App. at 646-647. We find no error in the trial court's denial of the motions to suppress.

_____

[2] See generally *State v. Wright*, 221 Ga. App. 202, 205 (3) (470 SE2d 916) (1996) (it is not necessary that defendant be charged with every potential crime of which an officer had reasonable, articulable suspicion).

*Judgment affirmed. Miller, P. J., and Brown, J., concur.*